O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PARMASIVAN GOUNDER, | ) | CASE NO. CV 12-04886 RZ |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

       Plaintiff had surgery on both his lower back and his upper back, but still claimed that he had back pain, that the pain sometimes radiated to other parts of his body, and that he was unable to work. That is what his treating physician said also. The Administrative Law Judge did not believe either Plaintiff or the treating physician, and found that Plaintiff could perform certain jobs that were plentiful enough in the economy, and therefore that Plaintiff was not disabled. The Administrative Law Judge erred, and Plaintiff is entitled to an award of benefits.

       This case is much like *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001). There the Court of Appeals noted that the Administrative Law Judge had selectively relied on certain entries in the medical record while downplaying others, 246 F.3d at 1207, and further used the selectivity, among other errors, in wrongly rejecting the opinion of a treating physician, 246 F.3d at 1208. As there, the Administrative Law Judge here ignored

many parts of the record that would have given credence to Plaintiff and his doctor. In doing so, he acted contrary to the teachings of the Ninth Circuit.

It has long been settled that, unless the claimant is a malingerer, his claims of excess pain cannot be discredited absent specific and legitimate reasons for doing so, assuming that the impairments can reasonably give rise to the pain. *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*). The Administrative Law Judge found that Plaintiff had severe impairments of "cervical and lumbar degenerative disc disease status post fusion and diskectomy." [AR 10] No one doubts that disc disease can produce pain, and it is also clear that pain is idiosyncratic and not subject to objective measurement. *Fair v. Bowen*, 885 F.2d 597 (1989). Therefore, the Administrative Law Judge was required to provide specific and legitimate reasons for disbelieving Plaintiff's assertions as to his symptoms. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).

Using formulaic language, the Administrative Law Judge here found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [AR 21-22] He then discussed the medical evidence, which, by itself would be insufficient to discredit a claimant's claims of pain; inconsistency with objective medical evidence can be one factor impeaching credibility, *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001), but it cannot alone suffice. *Bunnell*, 947 F.2d at 345; *Light v. Social Security Administration,* 119 F.3d 789, 792 (9th Cir. 1997); *Fair* , 885 F.2d at 602. The Administrative Law Judge then appended three reasons why "the course of medical treatment in this case does not bolster the claimant's credibility with respect to the degree of pain and other subjective complaints." [AR 24] Those were (1) unlike what one would expect "for a totally disabled individual," Plaintiff made relatively infrequent trips to his neurosurgeon for his neck and lumbar pain; (2) Plaintiff failed to follow up on recommendations made by treating doctors, such as physical therapy after his lumbar surgery, suggesting that the symptoms may not have been

as serious as Plaintiff asserted; and (3) Plaintiff's use of medications does not indicate that his pain is as serious as he asserts. [*Id.*]

These reasons were insufficient to discredit Plaintiff's descriptions of his subjective symptoms. The Court is not sure how frequently the Administrative Law Judge thinks a person beset with back pain should consult a neurosurgeon, but Plaintiff did, of course, consult a surgeon and undergo two significant surgeries, and he visited surgeons at least half a dozen times. Nor is it accurate to say that Plaintiff failed to follow up on recommendations of treating doctors, such as the recommendation that he pursue physical therapy after his lumbar surgery. The record indicates otherwise. A June 8, 2005 report from Dr. Chu states that "Plaintiff tried a session of physical therapy, had pain and stopped." [AR 163] A report two months later states that "Despite physical therapy and traction, he has not had improvement." [AR 161] It is clear, therefore, that Plaintiff at least tried physical therapy, as recommended by his medical professionals. The fact that it was not successful cannot legitimately be interpreted as meaning that Plaintiff failed to pursue physical therapy.

The Administrative Law Judge's third rationale for his conclusion that the course of Plaintiff's treatment discredits Plaintiff's statement of his subjective symptoms also does not withstand much scrutiny. The Administrative Law Judge stated that "the claimant's use of medications does not suggest the presence of an impairment which is more limiting than found in this decision." [AR 24] No medical expert voiced such an opinion, however, and an administrative law judge is not himself a doctor. *Cf. Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record. [citations omitted]"); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (administrative law judge normally not permitted to go beyond record because he is not qualified as a medical expert). The determination of whether the medication was too little to match Plaintiff's claimed symptoms is not something within a judge's expertise. In addition, the factual statements that the Administrative Law Judge

relied on in this area are not borne out by the record. The Administrative Law Judge stated [AR 24], as he had earlier in his decision [AR 23], that in May and June 2008 Plaintiff no longer was taking or being prescribed Vicodin; yet, while the page of the record cited by the Administrative Law Judge does not list Vicodin [AR 478], the same report covering the same date of medical evaluation lists Vicodin's generic equivalent. [AR 480] The Administrative Law Judge stated that Plaintiff "admitted that while he could take up to 8 pills a day, he only needed 4 to control his pain." [AR 23] Again, however, that is not a fair reading of the record. The reference to 8 pills a day comes from a February 5, 2009 doctor's note that says "I saw the pt initially on 8/22/06 and since then he has been stable on his use of Vicodin 5/500 (max 8/day) and satisfied." [AR 371] An earlier note on March 13, 2008 contains somewhat confusing information as at one point it seems to indicate that Plaintiff is not taking Vicodin [AR 489], at another point that he is taking Vicodin every 4-6 hours as needed [*id*.] and at a third point that "at last visit" he was taking 4 tablets daily. [AR 491] It is not reasonable to conclude from such a juxtaposition of records that Plaintiff "admitted" that his pain was controlled with only four pills a day, certainly over any lengthy period of time.

The Administrative Law Judge identified two other reasons for disbelieving that Plaintiff's activities were as limited as Plaintiff asserted. First, he said, limited daily activities cannot be verified objectively. In general, this is not necessarily so, as there can be testimony from percipient witnesses as to a claimant's activities. Moreover, to the extent it is true, it begs the question; the entire purpose of a credibility analysis is to assess a claimant's testimony as to matters that are not otherwise easily verifiable.

The Administrative Law Judge also said that, even if Plaintiff's activities were as limited as he asserted, that it was difficult to tie those limitations to Plaintiff's medical condition "in view of the relatively weak medical evidence and other factors discussed in this decision." [AR 24] The Court did not see "other factors" discussed; the focus of the decision is on the medical evidence. This reason for disbelieving Plaintiff, then, again comes down to the Administrative Law Judge's view that Plaintiff's condition is

inconsistent with the medical evidence. As indicated above, that alone is not a sufficient basis for discrediting Plaintiff.

In addition, however, the Administrative Law Judge improperly used selective evidence to reach his conclusions. For example, he stated that, two weeks after Plaintiff's July 2004 lumbar surgery, Plaintiff reported "absolute complete alleviation of his bilateral lower extremity pain." [AR 22, citing AR 294] The next report the Administrative Law Judge cites is from April 2005 [AR 22], and thus the impression is that Plaintiff's lumbar spine problem had been completely resolved. However, there were several reports between these two dates that show a different situation. Thus, in September 2004 Plaintiff saw his neurologist who this time stated that Plaintiff had some mild pain in his right lower extremity and some pain in his left foot, even though this was dramatically improved from his preoperative status. [AR 292] Then in December 2004 Plaintiff again saw his neurologist, this time reporting that all the pain in his left leg was gone but that he still intermittently gets pain in his right lower extremity, although again stating that it was significantly improved from preoperative status. In February 2005 Plaintiff again saw his neurologist and again reported, despite improvement from his preoperative status, "some continued pain down his left lower extremity as well as his posterior knees bilaterally." [AR 287] While an administrative law judge is not required to discuss every piece of evidence, he is required to discuss evidence that is significant, *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) and, by citing only the first report post-surgery and not the subsequent ones, the Administrative Law Judge has left a misleading impression that the lumbar surgery completely cured the radiating pain. That was not the case.

In fact, when Plaintiff did see his doctor in April 2005, the doctor noted that, as to Plaintiff's lumbar spine, Plaintiff "reports mild, temporary improvement from the surgery, but reports that he has had progression of his symptoms over time," and that his pain radiated down the posterior aspect of his thigh and calf to his heel; the doctor noted that straight leg raising was positive in both legs, and that the doctor's impression was "possible recurrent lumbar stenosis." [AR 165-66] The only part of this report that the

Administrative Law Judge mentioned, as to the lumbar spine, was the straight leg raising. [AR 22] The Administrative Law Judge did mention the results of a follow-up MRI, stating that there was "residual lateral recess and foraminal stenosis at the L4-5 bilaterally with a disc bulge to the left" [AR 22], but he did not indicate, as the MRI report does, that the lateral recess and foraminal stenosis were "significant" [AR 163] or the doctor's comment that, if physical therapy did not work "a re-exploration on the left could be entertained." [*Id.*]

A similar selectivity exists in the recitation of the evidence concerning Plaintiff's cervical spine. Thus, the Administrative Law Judge referenced the results of an MRI examination as reported on August 5, 2005, but characterized them in a slightly disparaging way: "*Although* physical examination yielded *no more than* mild deficits in neurological functioning, Dr. Chu recommended cervical diskectomy and fusion." [AR 22, citing AR 161; emphasis added.] Dr. Chu did not share this implication that the diskectomy was not justified by the results of tests of neurological functioning; in fact, Dr. Chu noted that Plaintiff's pain was aggravated with turning of the head and that Plaintiff's cervical range of motion was limited by pain, and he discussed with Plaintiff the disk herniations and their contribution to his neck pain "which appears refractory to medical therapy." [AR 161] The Administrative Law Judge did not address these views of Dr. Chu.

The discussion of the February 2006 visit produced similar selectivity. The Administrative Law Judge said that Plaintiff reported that "although he continued to have pain in his neck, it was much improved over his preoperative pain. A physical examination revealed full strength and intact sensation in his upper extremities, good range of motion in his shoulder, and no signs of abnormality in the corticospinal tract." [AR 22] But the Administrative Law Judge did not include other important parts of that report: that Plaintiff stated that he had pain radiating down to his bilateral shoulders, arms and elbows; that Plaintiff stated that when he takes his collar off, he feels it is very hard to hold his head

in place; and that the medical personnel did not evaluate cervical range of motion "secondary to pain." [*Id.*]

Probably through inadvertence, the Administrative Law Judge also did not discuss the March 2009 MRI of Plaintiff's cervical spine at all. That examination produced the following findings:

> FINDINGS: Status post laminectomy is noted at the level of C3-C5. The cord appears to be intact. There is no intra or extradural mass. There is no abnormal signal intensity within the cord. Metallic artifacts are noted superimposing the posterior aspect of the epidural space.
>
> Severe diffuse bulging disc is noted at the level of C3-C4, C4-5, C5-6 and impingement of the thecal sac. Spinal stenosis is noted at the level of C3-4 through C5-6. There is no evidence of cord compression.
>
> Minimal osteoarthritic changes are seen involving the fourth and fifth cervical intervertebral disc spaces.
>
> Incidentally noted is severe diffuse bulging disc at the level of T1-2, T2-3.

[AR 387] In this Court, the only argument the Commissioner makes about these findings is that "Plaintiff does not and cannot explain how such mild objective findings suggested total disability." (Defendant's Memorandum in Support of Answer 7:11-12.) The Administrative Law Judge's responsibility, of course, is to discuss the significant evidence, *Vincent v. Heckler, supra*, and post-hoc explanations in Court cannot substitute for what

is said (or not said) in the decision itself. *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). Nor can the failure to assess this evidence be harmless error; simply calling these findings "mild" does not make them so. Among other things, the MRI showed "severe" disc bulging at three intervertebral levels of the cervical spine, stenosis throughout those levels, and impingement on the thecal sac. And, even though this was to be an MRI of the cervical spine and not other areas of the spine, the technician also discovered, incidentally, "severe" disc bulging between two intervertebral levels of the thoracic spine as well.

These problems in selective reading of the record carried over into the Administrative Law Judge's review of the treating physician's opinion. The treating physician, Dr. Mahomar opined that Plaintiff had cervical myelopathy, cervical spondylosis, and that Plaintiff was in a status of post decompression fusion at C3-6. He described Plaintiff's prognosis as fair, indicating that Plaintiff had decreased function in both upper extremities due to pain, with limited range of motion. After describing Plaintiff's level and location of the pain source, the doctor opined that, in a regular work environment, Plaintiff could sit for an hour or less in an eight hour day and stand or walk for an hour or less in an eight hour day, and lift and carry no more than five pounds, and that only occasionally, and do no pushing, pulling, kneeling, bending or stooping. [AR 1045-51].

The Administrative Law Judge said he gave "limited weight" to this opinion. [AR 25] (Since he adopted none of the aspects of the opinion, it appears that he gave it no weight, not limited weight.) Among the reasons were that "[a]s indicated above, none of the imaging, range of motion or other objective evidence supports such extreme functional restrictions," and that the opinion is not supported by the doctor's own progress notes. [AR 25] But this is because the Administrative Law Judge referenced some parts of the record and not others, as shown earlier. The Administrative Law Judge also said that he disbelieved Dr. Mahomar because Dr. Mahomar apparently relied heavily on Plaintiff's reporting of his subjective symptoms, and the Administrative Law Judge already had found

good reasons for questioning the reliability of Plaintiff's reporting. [*Id.*] Again, as shown earlier, a full viewing of the record dispels this notion as well.

The only other reason that the Administrative Law Judge gave for not crediting the opinion of Dr. Mahomar was that Plaintiff treated with Dr. Mahomar on a yearly basis with no need for follow-up. This was not correct, although some of the fault may lie with Dr. Mahomar, who wrote on his questionnaire that his frequency of treatment was once a year. [AR 1045] The record reveals far more frequent visits to Dr. Mahomar. In any event, the frequency of visits does not impeach Dr. Mahomar; there is no logical reason that more frequent visits would yield a different opinion.

This is especially true when contrasted with the opinion of the State agency consultant, which the Administrative Law Judge did accept. That consultant apparently had no visits with Plaintiff at all, and merely filled out a check-the-box form, a process that the Court of Appeals has found wanting. *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983); *Batson v. Commissioner of Social Security*, 359 F.2d 1190, 1195 (9th Cir. 2004). On the basis of never having seen Plaintiff, the State agency consultant offered a dramatically different assessment: that Plaintiff could "stand/walk" four hours in an eight hour work day and sit six hours in an eight hour work day; that he could frequently lift and carry ten pounds, and occasionally twenty pounds; that he could frequently climb, balance, kneel and crawl; that he could occasionally stoop and crouch; and that his capacity for pushing and pulling was otherwise unlimited. [AR 676-80]

*Holohan* explained the difference between the different kinds of physician opinion:

> Title II's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the

claimant's file] (nonexamining [or reviewing] physicians)." [citations omitted] Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. [citations omitted] In addition, the regulations give more weight to opinions that are explained than to those that are not, see 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, see id. § 404.1527(d)(5).

In disability benefits cases, physicians typically provide two types of opinions: medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e., opinions about whether a claimant is capable of any work, given her or his limitations. Under the regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. 20 C.F.R. § 404.1527(d)(2); see also Social Security Ruling (SSR) 96-2p. An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. [citation omitted] If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§ ] 404.1527." SSR 96-2p; see id. ("Adjudicators must remember that a finding that a treating source medical opinion

- 10 -

is . . . inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she or he provides "specific and legitimate" reasons supported by substantial evidence in the record. [citation omitted] Similarly, an ALJ may reject a treating physician's uncontradicted opinion on the ultimate issue of disability only with "clear and convincing" reasons supported by substantial evidence in the record. [citations omitted] If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide "specific and legitimate" reasons in order to reject the treating physician's opinion. Id.

*Holohan*, *supra,* 246 F.3d at 1201-03 (footnotes omitted).

Under the circumstances of this case, the opinion of the non-examining State agency consultant cannot override the opinion of the treating physician. There is good reason for this distinction. A treating physician can observe things that may vivify the record, such as a grimace when getting up on an examining table or walking, how easily a person bends or stoops, or whether a person appears to be dissembling when he tries to rotate his shoulders. All of these are the sorts of fairly intangible things that can accompany back pain. A treating physician knows his patient in a way that the agency consultant, removed from even the examination process, cannot know him. *Sprague v.*

- 11 -

*Bowen* 812 F.2d 1226, 1230 (9th Cir. 1987); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

Under the circumstances of this case, therefore, the Administrative Law Judge erroneously rejected the opinion of Dr. Mahomar, and that opinion should be credited. As acknowledged at the hearing, accepting that opinion would mean that there would be no work an individual could perform. [AR 59-60] Accordingly, it is appropriate that benefits be awarded to Plaintiff. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In accordance with the foregoing, the decision of the Commissioner is reversed, and the matter is remanded for the awarding of benefits.

IT IS SO ORDERED.


DATED:   January 29, 2013

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE